

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   KRISHNA REDDY,                    )    Civil No. 09cv1325-L(BLM)
                                       )
12              Plaintiff,             )    **ORDER**
                                       )    **(1) GRANTING DEFENDANTS'**
13   v.                                )    **MEDQUIST, INC. AND CBAY**
                                       )    **SYSTEMS HOLDINGS LIMITED**
14   MEDQUIST, INC.,** *et al.*,**           )    **MOTION TO DISMISS;**
                                       )    **(2) GRANTING IN PART AND**
15              Defendants.            )    **DENYING IN PART DEFENDANT**
                                       )    **STEPHEN H. RUSCKOWSKI'S**
16                                     )    **MOTION TO DISMISS FOR LACK**
                                       )    **OF PERSONAL JURISDICTION**
17                                     )    **AND JOINDER IN DEFENDANTS'**
                                       )    **MEDQUIST INC. AND CBAY**
18                                     )    **SYSTEMS HOLDINGS LIMITED**
                                       )    **MOTION TO DISMISS; AND**
19                                     )    **(3) GRANTING IN PART AND**
                                       )    **DENYING IN PART DEFENDANT**
20                                     )    **KONINKLIJKE PHILIPS**
                                       )    **ELECTRONICS N.V.'S MOTION TO**
21   _____  )    **DISMISS UNDER FED. R. CIV. P.**
                                       )    **12(b)(2), (3), (4), (5) AND (6)**
22

23          In this action arising from an employment relationship, four Defendants filed motions to

24   dismiss.  Defendants MedQuist, Inc. ("MedQuist") and CBay Systems Holdings Limited

25   ("CBay") filed a motion to dismiss based on res judicata, improper venue and failure to state a

26   claim upon which relief can be granted.  Defendant Stephen H. Rusckowski joined in

27   MedQuist's and CBay's motion and independently moved to dismiss for lack of personal

28   jurisdiction.  Defendant Koninklijke Philips Electronics N.V. of the Netherlands ("Philips") also

1  joined in MedQuist's and CBay's motion, and independently moved to dismiss based on

2  improper service of process and lack of personal jurisdiction.  Plaintiff, appearing *pro se*,

3  opposed all motions.[1]  For the reasons which follow, the motion filed by MedQuist and CBay is

4  **GRANTED**.  All claims asserted against these Defendants are **DISMISSED** based on res

5  judicata.  The motions filed by Philips and Mr. Rusckowski are **GRANTED** to the extent the

6  court finds that venue is not properly laid in this district.  The case is  **TRANSFERRED** to the

7  United States District Court for the Central District of California.  In all other respects, the

8  motions filed by Philips and Mr. Rusckowski are **DENIED WITHOUT PREJUDICE** to

9  reasserting their remaining grounds for dismissal in the transferee district.

10         Plaintiff was employed as a medical transcriptionist by several employers, some of which

11  were acquired by MedQuist during the course of Plaintiff's employment.  Among other things,

12  Plaintiff alleges that she was paid by the line of transcription, however, MedQuist unilaterally

13  increased the number of characters or keystrokes necessary to constitute a line, in effect reducing

14  Plaintiff's pay without her consent.  Plaintiff alleges that by applying different standards for

15  what constituted a "line" for purposes of compensating the transcriptionists (longer line) as

16  opposed to billing clients (shorter line), MedQuist was able to maximize its profits.  It used these

17  profits to acquire several medical transcription businesses, and introduced the same profitability

18  scheme at each business it acquired.  Philips and MedQuist allegedly created the program which

19  enabled the under-compensation of transcriptionists by requiring more keystrokes or characters

20  per line.  Plaintiff alleges that Philips, MedQuist and other Defendants conspired in the scheme

21  to underpay transcriptionists and overcharge clients for transcription services, among other

22  things.

23         Plaintiff alleges claims for violation of the Racketeer Influenced and Corrupt

24  Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* and state law claims for civil conspiracy,

25

26         [1]     Plaintiff styled her responses to the motions filed by MedQuist and CBay on one
27  hand and Mr. Rusckowski on the other hand as "memorandum of points and authorities in
    support of cross-motion in opposition" to the motions.  Because Plaintiff did not comply with
28  Civil Local Rule 7.1 pertaining to motions, these pleadings are construed as oppositions rather
    than motions.

09cv1325

1   fraud and deceit; breach of contract and covenant of good faith and fair dealing; interference

2   with employment and economic advantage; and intentional and negligent infliction of emotional

3   distress.  This court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 1331 and

4   1367.

5          MedQuist and CBay move to dismiss the complaint arguing, among other things, that it is

6   barred by the doctrine of res judicata.  In September 2006 Plaintiff filed a complaint in the

7   United States District Court for the District of New Jersey ("New Jersey Action").  (Compl. at

8   10; Mem. of P.&A. in Supp. of Defs MedQuist and CBay Mot. to Dismiss ("MedQuist P.&A."),

9   Ex. 1 ("New Jersey Complaint").)[2]  The New Jersey Complaint alleges the same causes of action

10  based on essentially the same facts against thirteen defendants, all of whom are the same except

11  for CBay and Philips.[3]

12         On August 1, 2007 the court in the New Jersey Action granted MedQuist's motion to

13  dismiss and dismissed all claims except for breach of contract.  (MedQuist P.&A., Ex. 2.)  On

14  January 29, 2009 MedQuist's motion for summary judgment was granted.  (*Id.* Ex. 3.)  On

15  August 4, 2009 all claims asserted against all the remaining defendants were dismissed for

16  failure to serve and the complaint was dismissed in its entirety.  (Philips Resubmitted Request

17  for Judicial Notice in Supp. of Its Reply ("Philips Reply Judicial Notice"), Ex. C.)

18         "The preclusive effect of a federal-court judgment is determined by federal common

19  law," when subject matter jurisdiction in the prior case is based on federal question rather than

20  diversity.  *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 & n.4 (2008).  Subject matter jurisdiction in

21  the New Jersey Action was based on federal question.  (New Jersey Complaint at 2.)  "Res

22  judicata applies when the earlier suit (1) involved the same claim or cause of action as the later

23  suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies."

24

25         [2]     The court takes judicial notice of the court file in Krishna Reddy v. MedQuist, Inc.
26  *et al.*, civil case no. 06-4410 (RBK/AMD), United States District Court for the District of New
    Jersey.  A matter of public record outside the pleadings may be considered along with the
27  complaint when deciding a motion to dismiss.  *See MGIC Indem. Co. v. Weisman*, 803 F.2d 500,
    504 (9th Cir. 1986).

28         [3]     In the New Jersey Action Plaintiff named Royal Philips Electronics of the
    Netherlands as opposed to Koninklijke Philips Electronics N.V. of the Netherlands.

*Mpoyo v. Litton Elec.-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (internal quotation marks, ellipsis and citation omitted).

Plaintiff argues that the doctrine of res judicata does not apply because a final judgment on the merits has not been entered in the New Jersey Action. "A judgment is not a final judgment for res judicata purposes if further judicial action by the court rendering the judgment is required to determine the matter litigated." *Russell v. Commissioner of Internal Revenue*, 678 F.2d 782, 786 (9th Cir. 1982). Although the court did not enter a separate document captioned as judgment, "the true state of affairs is more critical than labels." *Hells Canyon Preservation Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2004) (internal quotation marks and brackets omitted). The disposition of all of Plaintiff's claims against MedQuist following a motion to dismiss and summary judgment was final, left nothing else to be decided as to MedQuist and therefore warrants preclusive effect. *See id.* at 686 (summary judgment constitutes final judgment on the merits).

The parties disagree whether Plaintiff's breach of contract claim based on a written contract which was not alleged in the New Jersey Complaint is precluded. Plaintiff alleges that she became aware of the terms of her written employment contract when she was shown a copy during her deposition in the New Jersey Action, which contract she did not have before, and which differed from her recollection of the terms. (Compl. at 6, 10 & Ex. B.) To the extent Plaintiff based her breach of contract claim on the terms of the newly-discovered contract, the New Jersey court declined to adjudicate it, as it was not alleged in the complaint. (MedQuist P.&A., Ex. 3 at 59.)

"The doctrine of claim preclusion bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986) (internal quotation marks, ellipses and citation omitted). Whether the bar should apply in a particular case depends on whether the two actions involve the same claim of cause of action. Four criteria apply to make this determination:

(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or

1   impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

2

3   *Mpoyo*, 430 F.3d at 987.

4        In the New Jersey Action Plaintiff sought damages for breach of the same contract as in

5   the instant action.  The only difference is that in the New Jersey Complaint Plaintiff relied on her

6   recollection to allege the terms of her compensation, whereas in the instant action she relies on

7   the document itself.  (*See* Compl. at 10.)

8        In *Mpoyo v. Litton Electro-Optical System* a late discovered claim was held precluded by

9   res judicata under analogous circumstances.  The plaintiff filed a Title VII action against a

10   former employer.  *Mpoyo*, 430 F.3d at 986.  After completion of discovery, the plaintiff moved

11   to amend the complaint to add claims under the Fair Labor Standards Act ("FLSA") and the

12   Family and Medical Leave Act ("FMLA"), of which he was unaware when he had filed the

13   complaint initially.  *Id*. at 986, 988.  The motion for leave to amend was denied and the

14   defendant prevailed on summary judgment.  *Id*. at 986.  The plaintiff filed a new action alleging

15   the FLSA and FMLA claims which were not included in the prior action, but the new action was

16   dismissed based on res judicata.  *Id*. at 986, 989.  The dismissal was affirmed on appeal.  The

17   court reasoned that "[b]ecause both sets of Mpoyo's claims arise from Litton's conduct while

18   Mpoyo was an employee and specifically from the events leading to his termination, his claims

19   relate to the same set of facts." *Id*. at 987.  The court found that the second action arose from the

20   same transaction or series of transactions as the first action, and considered it persuasive in

21   dismissing the second action based on res judicata.  *Id*. at 987 & 988.

22        As in *Mpoyo*, in this case the two breach of contract claims arise out of the same

23   transactional nucleus of facts.  Furthermore, the rights and interests established in the New

24   Jersey Action would be destroyed or impaired by prosecution of the instant action against

25   MedQuist, and the two suits involve the infringement of the same right to compensation.  While

26   the instant action would include additional evidence, *i.e.*, the written contract, all other evidence

27   of breach would overlap.  That additional evidence would be presented in this case does not

28   / / / / /

1   negate res judicata.  *See Mpoyo*, 430 F.3d at 987-88 (common nucleus criterion outcome

2   determinative).

3           Plaintiff asserts she was not aware of the written terms of the contract.  However,

4   "ignorance of a party does not avoid the bar of res judicata unless the ignorance was caused by

5   the misrepresentation or concealment of the opposing party."  *Id*. at 988 (internal quotation

6   marks, brackets, ellipsis and citation omitted).  When Plaintiff filed the New Jersey Action, she

7   knew there was a written contract containing the terms of her compensation.  (New Jersey

8   Complaint at 31.)  In her opposition, she does not state whether she had ever requested this

9   document before filing the New Jersey Action or in discovery therein, and does not explain why

10  she did not seek leave to amend in the New Jersey Action.  She alleges, "I was not aware of the

11  written terms of the contract . . . since MedQuist did not provide me a copy of the executed

12  contract . . . ."  (Compl. at 10; *see also id.* at 6 ("MedQuist did not provide me with a signed copy

13  of the contract that it had executed during my employment . . ..").)  This falls short of

14  misrepresentation or concealment by MedQuist.

15          "Res judicata relieves parties of the costs and vexation of multiple lawsuits, conserves

16  judicial resources, and, by preventing inconsistent decisions, encourages reliance on

17  adjudication.  *Mpoyo*, 430 F.3d at 988.  (internal quotation marks, brackets and citation omitted).

18  "Permitting . . . later-filed claims to proceed would create incentive for plaintiffs to hold back

19  claims and have a second adjudication."  *Id.* at 989.  Based on the foregoing, Plaintiff's breach

20  of contract claim is precluded, whether based on her recollection or the document itself.

21          The parties also disagree whether res judicata precludes asserting claims against CBay,

22  which was not a named defendant in the New Jersey Action.  The sole allegation linking CBay

23  to this action is that in or about May 2008, Philips sold its majority stake in MedQuist to CBay.

24  (Compl. at 10.)  As a succeeding MedQuist owner, CBay is a privy and has the benefit of res

25  judicata.  *See Taylor*, 128 S. Ct. at 2172.  Based on the foregoing, all claims asserted against

26  MedQuist and CBay are barred by the doctrine of res judicata and are therefore **DISMISSED**.

27          As to the remaining Defendants, the New Jersey Action was dismissed based on failure to

28  serve within the time provided by Federal Rule of Civil procedure 4(m).  After granting

09cv1325

1  summary judgment in MedQuist's favor, the court *sua sponte* raised the issue that Plaintiff had

2  not served the remaining defendants within the time provided by Rule 4(m), and set a date by

3  which Plaintiff was to file proofs of service or the case would be dismissed.  (MedQuist P.&A.,

4  Ex. 3 at 62.)  Ultimately, the court found that Plaintiff did not timely serve any of these

5  defendants and dismissed the case without prejudice.[4]  Pursuant to Rule 4(m), dismissal for

6  failure to timely serve is without prejudice.  A dismissal without prejudice does not constitute

7  final judgment on the merits for purposes of res judicata.  *Hells Canyon*, 403 F.3d at 686 ("final

8  judgment on the merits is synonymous with dismissal with prejudice).  Accordingly, res judicata

9  does not preclude the claims asserted in this case against Philips[5] or Mr. Rusckowski.

10       Philips and Mr. Rusckowski object, among other things, to venue in this district pursuant

11  to Federal Rule of Civil Procedure 12(b)(3).  Generally, the plaintiff has the burden of showing

12  that venue is properly laid.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496

13  (9th Cir. 1979).  Under Rule 12(b)(3), the court may consider facts outside the pleadings.

14  *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).  When the evidence is

15  controverted, *i.e.*, when both sides present contradictory evidence, the court must "draw all

16  reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor

17  of the non-moving party."  *Id*. at 1138.

18       As it pertains to venue, Plaintiff alleges that in 1992 she worked as a medical

19  transcriptionist for Transcriptions Limited, Inc. at its Culver City branch, which was

20  subsequently acquired by MedQuist.  (Compl. at 4.)  In 1996, she started working for an

21  / / / / /

22  / / / / /

23

24       [4]       On February 18, 2009 the court issued an order dismissing the remaining
         defendants without prejudice because Plaintiff failed timely to file proofs of service.  (Krishna
25       Reddy v. MedQuist, Inc. *et al.*, civil case no. 06-4410 (RBK/AMD), D. N.J., docket no. 79.)
         Having subsequently determined that Plaintiff timely filed proofs of service, on August 4, 2009
26       the court on its own motion reconsidered the February 18 order.  (Philips Reply Judicial Notice,
         Ex. C at 1.)  Upon review of the proofs, however, the court determined that service was not
27       proper as to any of the remaining defendants and declined to alter the February 18 order.  (*Id*.)
         Accordingly, the court dismissed the action in its entirety.  (*Id*. at 17.)

28       [5]       Arguably Philips was not named in the New Jersey Action at all.  *See* fn. 3 *supra*.
         Accordingly, there could be no res judicata bar as to Philips on this ground as well.

1   additional transcription company,[6] which was acquired by the MRC Group.  (*Id*.)  The MRC

2   Group was subsequently acquired by MedQuist, which retained some of MRC Group's

3   executives.  (*Id*.)  The MRC Group unilaterally reduced the transcriptionists' pay by increasing

4   the number of keystrokes or characters required per line, thus reducing the transcriptionists' pay.

5   (*Id*.)   Because she believed she was not paid as promised and for other reasons, Plaintiff left the

6   MRC Group and started working as a medical transcriptionist for Your Office Genie in

7   Monrovia.  (*Id*. at 4.)  Subsequently MedQuist acquired Your Office Genie.  (*Id*.)  At that time,

8   Plaintiff was working for Your Office Genie in Monrovia and Transcriptions Limited, Inc. in

9   Culver City, both of which had become MedQuist's branch offices.  (*Id*.)  MedQuist required

10  Plaintiff to decide on one branch to work for.  (*Id*.)  She selected Your Office Genie, *i.e.*, the

11  Monrovia branch, based on representations about the amount of work and compensation, and

12  entered into a Medical Transcription Contract.  (*Id*. & Ex. B.)  As was as the case with the MRC

13  Group, MedQuist unilaterally increased the number of characters or keystrokes required per line

14  at the companies it acquired.  (*Id*. at 6.)  At the Monrovia branch, Plaintiff was allegedly

15  harassed and under-compensated.  (*Id*. at 7-8.)  When she complained, she was not given any

16  more work and her contract was terminated in September 2003.  (*Id*. at 8.)  She applied for and

17  was offered employment at the Culver City/Orange County branch; however, the offer was

18  withdrawn because MedQuist had made her "rehire ineligible," a decision made at the Monrovia

19  branch.  (*Id*.)

20      In December 2003, Plaintiff sent an e-mail to the MedQuist board of directors,

21  stockholders and trustees, notifying them of her intent to sue.  (*Id*. at 9.)   The e-mail was

22  addressed to Mr. Rusckowski, among others, at MedQuist's New Jersey address.  (Pl.'s Mem. of

23  P.&A. in Supp. of Cross-Mot. in Opp'n to Def. Stephen H. Rusckowski's Mot. to Dismiss ("Pl's

24  Opp'n to Rusckowski"), Ex. A.)  At the same time, Plaintiff filed a complaint with the

25  / / / / /

26

27

28

---

[6]      Plaintiff does not allege the name or location of this employer.

09cv1325

1   Department of Labor.  (Compl. at 9.)[7]  She alleges that the addressees did nothing about her

2   complaints and did not attempt to undo the alleged illegal acts of other Defendants.  (*Id.*)

3         In 2004 Plaintiff started working for another transcription company,[8] which used

4   DocQscribe transcription program.  (*Id*. at 9.)  Plaintiff discovered that this program was created

5   by MedQuist and Philips, and that it managed the new employer's transcription line counts the

6   same way as it did at MedQuist – by increasing the number of required characters or keystrokes

7   per line.  (*Id.*)

8         Venue in this case is governed by 28 U.S.C. Section 1391(b) and the special venue statute

9   for RICO actions, 18 U.S.C. Section 1965(a).  The RICO venue statute is written in permissive

10   rather than restrictive terms:

11           Any civil action or proceeding under this chapter against any person may be
        instituted in the district court of the United States for any district in which such
12           person resides, is found, has an agent, or transacts his affairs.

13   18 U.S.C. §1965(a).  "As a general matter, the courts have interpreted special venue provisions

14   to supplement, rather than preempt, general venue statutes."  *Go-Video, Inc. v. Akai Elec. Co.,*

15   *Ltd.*, 885 F.2d 1406, 1409 (9th Cir. 1989); *cf. Cortez Byrd Chips, Inc. v. Bill Harbert Constr.*

16   *Co.*, 529 U.S. 193, 198 (2000) ("permissive special venue statutes supplement, but do not

17   supplant, the general provision").  Neither side contends that the RICO venue statute supplants

18   28 U.S.C. Section 1391, the general venue statute.  Accordingly, 28 U.S.C. Section 1391

19   provides the following additional options:

20           A civil action wherein jurisdiction is not founded solely on diversity of citizenship
        may, except as otherwise provided by law, be brought only in (1) a judicial district
21           where any defendant resides, if all defendants reside in the same State, (2) a
        judicial district in which a substantial part of the events or omissions giving rise to
22           the claim occurred, or a substantial part of property that is the subject of the action
        is situated, or (3) a judicial district in which any defendant may be found, if there
23           is no district in which the action may otherwise be brought.

24   28 U.S.C. § 1391(b).  As the RICO venue provision supplements the general venue provision of

25   / / / / /

26

27       [7]    Plaintiff does not allege in which district she filed the Department of Labor
complaint.  It was dismissed in September 2005.  (*Id.*)
28

    [8]    Plaintiff does not allege the name or location of this employer.

1  section 1391(b), venue in this district is proper if it is proper under any option provided in either

2  statute.

3      Mr. Rusckowski is named in the complaint both in his capacity as an agent for MedQuist

4  and in his individual capacity.  (Compl. at 1 & 3.)  As pertains to venue under 18 U.S.C. Section

5  1965(a), Plaintiff alleges that he is a Massachusetts resident (*id*. at 3) but otherwise does not

6  allege where he is found, has an agent, or transacts his affairs, and does not provide any

7  additional facts relevant to venue as to Mr. Rusckowski in her opposition papers.  Mr.

8  Rusckowski was MedQuist's interim President and CEO from December 2003 to July 2004 and

9  never worked at any MedQuist offices in California.  He is a Massachusetts resident who lives

10 and works in Massachusetts and does not regularly visit California.  (Decl. of Def. Stephen H.

11 Rusckowski.)  Plaintiff does not attempt to controvert this evidence.

12     As with Mr. Rusckowski, Plaintiff does not allege Philips' residence, where it is found,

13 has an agent, or transacts its affairs.  Plaintiff also does not provide any additional relevant facts

14 in her opposition.  Philips is a corporation incorporated in the Netherlands with its principal

15 place of business in the Netherlands.  (Decl. of Marnix van Ginneken.)  It is a holding company

16 with twelve employees, none of whom work in California.  (*Id*.)  It owned approximately 70

17 percent of MedQuist stock as a "non-core holding."  (Philips Reply Judicial Notice, Ex. A & B

18 (Security and Exchange Commission filings).)  Philips has no business dealings or other contacts

19 with California.  (Decl. of Marnix van Ginneken.)  Plaintiff does not attempt to controvert this

20 evidence.

21     Accordingly, as to Philips or Mr. Rusckowski, venue in this district is not proper under 18

22 U.S.C. Section1965(a).[9]  Furthermore, as Mr. Rusckowski is a Massachusetts resident, venue in

23 this case is not governed by 28 U.S.C. Section 1391(b)(1).

24     Under section 1391(b)(2), venue is proper in the "judicial district in which a substantial

25 part of the events or omissions giving rise to the claim occurred."  Plaintiff alleged that this

26 district is the proper venue under section 1391(b) because the Medical Transcription Contract

27

28      [9]    To the extent venue may be proper in this district as to any other Defendant, venue as to Philips or Mr. Rusckowski cannot be based solely on their alleged status as co-conspirators.  *See Piedmont Label Co.*, 598 F.2d 491.

1    was executed and performed in California.  (Compl. at 2.)  California contains four federal

2    judicial districts.  28 U.S.C. § 84.  None of the facts alleged in the complaint places a substantial

3    part of the events in this district.  Plaintiff alleges that in September 2003 Karen Harness, the

4    Transcription Supervisor at the Culver City/Orange branch, "made arrangements for a new

5    computer for [Plaintiff] to work at home on the accounts of the Culver City/Orange branch."

6    (Compl. at 8.)  In her opposition, she offers that Ms. Harness worked out of a San Diego office

7    and that MedQuist has a San Diego office.  (Mem. of P.&A. in Supp. of Cross-Mot. in Opp'n to

8    the Def. MedQuist, Inc. and CBay Sys. Holdings Mot. to Dismiss ("Pl.'s Opp'n") at 9.)  Even if

9    the court accepted these new facts, which are not alleged in the complaint or included in an

10   affidavit, they do not represent events giving rise to Plaintiff's claims.  Plaintiff's

11   communication with Ms. Harness is not an event which gave rise to the claims.  The claims

12   arose from Defendants' representations regarding Plaintiff's compensation, the unilateral change

13   in the terms of compensation, and the eventual termination as "rehire ineligible," none of which

14   occurred in this district according to Plaintiff's allegations.  Therefore, venue is not proper in

15   this district under section 1391(b)(2).[10]

16       The district court of a district in which is filed a case laying venue in the wrong
         division or district shall dismiss, or if it be in the interest of justice, transfer such
17       case to any district or division in which it could have been brought.

18   28 U.S.C. § 1406(a).  In the interests of justice, the court declines Defendants' invitation to

19   dismiss.

20       As an alternative to dismissal, MedQuist's motion requests transfer to the District of New

21   Jersey to the extent final adjudication has not been reached in the New Jersey Action, so that the

22   remaining issues could be resolved in the same court.[11]  (MedQuist & CBay Reply  in Supp. of

23   Mot. to Dismiss ("MedQuist Reply") at 2.)  The New Jersey Action was dismissed on August 4,

24   2009.  (Philips Reply Judicial Notice, Ex. C at 1.)  Accordingly, the premise of MedQuist's

25

26       [10]      Because venue with respect to Philips and Mr. Rusckowski is not properly laid in
     this district, the court need not reach their respective contentions that they are not subject to
     personal jurisdiction in the forum.  *See Piedmont Label Co.*, 598 F.2d at 496.

27

28       [11]      Philips and Mr. Rusckowski joined in MedQuist's motion, however, the
     suggestion to transfer this action to the District of New Jersey was raised for the first time in
     MedQuist's reply.

1   argument – that judicial efficiency would be served if the same court decided what is essentially

2   the remainder of the New Jersey Action – is no longer valid.

3        The only facts provided by the parties which link this action to the District of New Jersey

4   are that MedQuist is a New Jersey corporation (Compl. at 2; *see also* MedQuist Reply at 4

5   (MedQuist is headquartered and maintains its principal place of business in New Jersey) and that

6   Plaintiff's December 2003 notice of intent to sue e-mail to the MedQuist board of directors,

7   stockholders and trustees referenced MedQuist's New Jersey address (*Id.* at 9 & Pl.'s Opp'n to

8   Rusckowski, Ex. A).

9        The implied argument in support of the District of New Jersey is that because the New

10  Jersey Action was brought there, this action could have been brought there as well.  However,

11  MedQuist, as a New Jersey corporation, had no reason to object to venue in New Jersey, and the

12  remaining defendants were not served and did not appear.  In this action it is irrelevant that

13  venue may be proper in New Jersey as to MedQuist because MedQuist is no longer a party.  The

14  argument that the New Jersey Action warrants a transfer to the District of New Jersey is

15  therefore rejected.

16       No facts are provided to conclude that venue under 18 U.S.C. Section 1965(a) would be

17  proper in the District of New Jersey as to Philips or Mr. Rusckowski.  In addition, MedQuist's

18  principal place of business in New Jersey and Plaintiff's December 2003 e-mail do not give rise

19  to any of the claims for purposes of venue under 28 U.S.C. Section 1391(b)(2).  Plaintiff's

20  claims arose from Defendants' representations regarding Plaintiff's compensation, the unilateral

21  change in the terms of compensation, and the eventual termination as "rehire ineligible," all of

22  which occurred prior to December 2003, and none of which, based on the record before the

23  court, occurred in New Jersey.  Accordingly, venue would not be proper in the District of New

24  Jersey.

25       To the extent Plaintiff provides relevant facts at all, they show the acts and omissions

26  which gave rise to her claims occurred in Culver City and Monrovia, both of which are located

27  in the Central District of California.  28 U.S.C. § 84(c).  Because a substantial part of the events

28  or omissions giving rise to the claims occurred in the Central District of California, venue is

1  proper there under 28 U.S.C. Section 1391(b)(2), and the case could have been brought there for

2  purposes of transfer under 28 U.S.C. Section 1406(a).

3       Plaintiff argues that transferring the case to the Central District of California would be

4  unconstitutional because its judges are biased against her, as evidenced by a vexatious litigant

5  order issued in that district against her.  (Pl.'s Opp'n at 11.)  The vexatious litigant order, issued

6  more than ten years ago, applies to Plaintiff's claims against parties other than any named

7  Defendants herein and to matters unrelated to this case.  (*See* MedQuist P.&A., Ex. 4 at 67;

8  Evidence in Supp. of Cross-Mot. in Opp'n to MedQuist and CBay 's Mot. to Dismiss, Ex. N.)  It

9  therefore does not preclude Plaintiff from litigating her current claims in the Central District of

10  California.

11       Plaintiff's reliance on *Holt v. Virginia*, 381 U.S. 131 (1965), is unavailing.  In *Holt*, a

12  counsel ("defendant") was charged with contempt of court.  He hired counsel, who filed a

13  motion to transfer venue of the contempt charge, alleging that the judge who issued the charge

14  should not preside over the trial of the charge due to bias and because there was local prejudice

15  in the community.  When the defendant's counsel read and argued the motion in court, the

16  defendant and his counsel were summarily adjudged to be in contempt of court based on the

17  contents of the motion.  The judgment was reversed because the defendant and his counsel were

18  punished solely for exercising the constitutional right of an accused to defend against contempt

19  charges.

20       *Holt* is not controlling of the venue issues in this case.  Plaintiff is not asserting

21  constitutional rights pertaining to a defense against criminal charges.  She alleges bias based on

22  the vexatious litigant order which was issued more than ten years ago, pertains to a matter

23  unrelated to this case, and does not preclude her from litigating this case.  Therefore, Plaintiff's

24  argument that a transfer to the Central District of California would be unconstitutional is

25  rejected.

26       Rather than dismissing the case under 28 U.S.C. Section 1406(a), in the interests of

27  justice, this action is **TRANSFERRED** to the United States District Court for the Central

28  District of California.

09cv1325

Based on the foregoing, it is hereby **ORDERED**:

1.  The motion to dismiss filed by Defendants MedQuist, Inc. and CBay System Holdings Limited is **GRANTED**.  All claims alleged against these Defendants are **DISMISSED** on the grounds of res judicata.

2.  The Clerk of Court shall **TRANSFER** this action to the United States District Court for the Central District of California.

3.  The motions to dismiss filed by Defendants Stephen H. Rusckowski and Koninklijke Philips Electronics N.V. of the Netherlands are **GRANTED** to the extent the court finds that venue is not properly laid in this district.  The motions are **DENIED** in all other respects **WITHOUT PREJUDICE** to raising the remaining grounds for dismissal in the transferee district.

**IT IS SO ORDERED.**

DATED:  March 5, 2010

M. James Lorenz
United States District Court Judge

09cv1325